### ALLEN v. ARMSTRONG.

(Supreme Court, Appellate Division, First Department. March 8. 1901.)

1. CONTRACTS—WRITTEN AGREEMENT—PAROL EVIDENCE—ADMISSIBILITY.

> Defendant engaged plaintiff as general manager, and agreed to pay him a stated salary, and 10 per cent. commission on all orders personally secured by plaintiff on which the usual profits accrued, and 5 per cent. on all orders on which one-half of the usual profits were secured. *Held*, that parol evidence was admissible to show what were defendant's usual profits, as a basis for calculating plaintiff's commissions.

2. SAME—ACCRUAL OF PROFITS—RIGHT TO COMMISSIONS.

> Defendant engaged plaintiff as general manager, and, in addition to a stated salary, agreed to pay plaintiff 10 per cent. commission on all contracts personally secured by plaintiff on which the usual profits accrued, and 5 per cent. on all on which one-half of the usual profits were secured, and that special orders for greater or smaller profits were to be arranged at the time the orders were taken. *Held*, that plaintiff was not entitled to commissions on orders which had been taken and accepted by defendant, but on which nothing was payable or had been paid at the time of plaintiff's discharge, since the profits cannot be said to have accrued until the work secured by the orders was either paid for, or the right to enforce present payment existed.

Appeal from judgment on report of referee.

Action by Charles S. Allen against D. Maitland Armstrong. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Mornay Williams, for appellant.

Arnold L. Davis and Wm. B. Ellison, for respondent.

HATCH, J. The action was brought by the plaintiff on a written contract, to recover certain commissions and salary alleged to be due him thereunder. By the contract the defendant agreed to employ the plaintiff, and pay him the sum of $2,000 a year for his services as general manager and accountant for the business of D. Maitland Armstrong & Co.; and the defendant agreed to faithfully perform said duties to the best of his ability, and in accordance with the wishes and general directions of said D. Maitland Armstrong. It was further agreed that the plaintiff should be paid "a commission on all orders which may come to the firm from clients which he has already personally secured, or which he may personally secure in the future. Said commission to be ten per cent. on all orders from which accrue the usual profits, and five per cent. on orders from which half the usual profit is secured; special orders of greater or smaller profits to be arranged at the time of taking them." The claim for salary is for the last two weeks of the employment, amounting to $77. The claim for commissions arises on certain specified contracts, some of which, it is

conceded, were not completed at the time the action was brought. The answer sets up—First, a general denial; and, second, separate defenses and counterclaims, on the ground of failure of the plaintiff to keep the books of the defendant, false representations alleged to have been made by the plaintiff to the defendant with reference to the state of accounts, and an alleged claim for misappropriation of moneys of the defendant. The referee awarded judgment to the plaintiff upon both his alleged causes of action, and dismissed the counterclaims of the defendant, and from the judgment entered this appeal is taken.

The right of the plaintiff to recover commissions in the action depends upon the construction of the portion of the written agreement hereinbefore quoted. The plaintiff maintains that the commissions provided for were to be estimated, and that they "accrued" and had been "secured," within the meaning of the contract, when the orders were taken and accepted by the defendant, while the defendant contends that such commissions were contingent, and made to depend upon the actual profits accruing and secured when the contracts had been fully closed. In accordance with the plaintiff's contention, the referee held that the profits upon contracts which the plaintiff had secured or might secure had accrued and were secured at the time when the contracts for the performance of the work had been entered into. In reaching this conclusion the referee held that the term "usual profits" was ambiguous, and consequently parol testimony was admissible to show what the contract meant. It is quite clear that nothing which is contained in the contract shows what were the usual profits which the defendant obtained, and undoubtedly parol testimony was competent for the purpose of showing what were the usual profits earned by the defendant in the performance of the contracts, as such proof would be necessary, not to explain or vary the terms of the contract, but to show a basis for the commissions to be awarded to the plaintiff for the contracts which he had secured or might secure. But this fact is entirely aside from the significance to be attached to the language contained in the contract entitling the plaintiff to commissions. By its terms he was entitled to 10 per cent. on all orders from which "accrued" the usual profits, and 5 per cent. on orders from which half the usual profits were "secured"; special orders of greater or smaller profits to be arranged at the time of taking them.. Reading this clause as a whole, it is clear that there is no ambiguity whatever. The 10 per cent. is to be paid upon profits which "accrued," the 5 per cent. upon profits which are "secured," and on special contracts such rate of compensation as may be agreed. Profits may not be said to have accrued until they have become fixed or payable. Nor can they be said to have been secured until they have been earned, and either paid or placed in such form as to enable the party to realize thereon. Until that time nothing has been accomplished from which profits can arise, and the commissions are only payable upon profits. The popular signification of these words indicates that the thing to which they refer has been reduced to possession, or so placed that possession may be secured,—in other words, that the right to receive is definite, determined, and fixed. The technical meaning of the word "accrue," as defined in the dictionary, is the possession of a present, enforceable

right. A note is said to accrue when it becomes due and payable. Profits have accrued when they are paid, or when the right to enforce payment presently exists. And "secure" means that which is presently reduced to possession, or that of which payment is made sure. It is perfectly evident that a construction of these words which attaches thereto a contingency which may or may not happen distorts their meaning, as popularly used and scientifically defined. Nor can such meaning be attached to them by any connection with language appearing in the present contract. The first provision is to pay 10 per cent. on all orders from which "accrue" the usual profits. It is clearly evident from this language that the 10 per cent. commission is dependent upon whether profits accrued upon the performance of the contract in the usual amount. If they do not, then the plaintiff would not, upon that contract, become entitled to 10 per cent. If but half the usual profits were "secured," then he would fall into the second category, and only receive 5 per cent. And, if it fell below the latter rate, he might or might not receive commissions, dependent upon what should be the special arrangement. It is only in that class of contracts where the usual profits are earned that he becomes entitled to his 10 per cent. And the same is true when half profits are earned, when he is to receive 5 per cent. This is the clear reading of the contract. And the fact that the usual profits which are expected to be received are not fixed, and resort may be had to parol proof to determine their amount, does not in the slightest degree make the basis of payment indefinite, uncertain, or ambiguous, because the commission is in no event to be paid unless the profits have accrued or been secured. It was undoubtedly contemplated by the parties to the contract that certain contracts would result in producing the usual profits, certain others one-half, and certain others would be the result of special arrangement, and therefore provision was made for fixing the commissions which the plaintiff was entitled to receive upon each contract. But payment of the commissions was an entirely different matter, regulated upon a fixed basis; i. e. that profits in the respective amounts must have accrued and been secured by a performance of the contracts. It can scarcely be within reasonable contemplation that the defendant understood that commissions were to be paid upon estimated profits. The proof in the present case shows that as to some of the contracts a very small profit—far below the estimated amount—accrued, as to some there was a loss, and as to others they were not completely performed at the time of the commencement of the present action. The construction for which the plaintiff contends would compel the defendant to pay commissions at a greater rate than upon the profits which he received, and in some cases to pay commissions upon profits when there was an actual loss. Under such circumstances, it would be most unreasonable to conclude that he was to pay upon estimated profits which were never secured, when his contract provides for payment of commissions only upon accrued and secured profits, or by special arrangement. The provision in the contract for the payment of net profits upon the volume of business after $12,000 had been set aside to the credit of the defendant adds no strength to plaintiff's contention of the construction which

the contract should receive. It related to an entirely different matter, and right thereto was made dependent not alone upon the contracts which the plaintiff should secure, but upon the whole volume of business which should be done, and from which profits in the specified amount should be derived. It was a provision for additional compensation to the plaintiff, to be figured upon an entirely different basis, and has no more bearing upon that clause of the contract providing for commissions than does the clause in the contract providing for payment of salary at the rate of $2,000 a year.

We conclude, therefore, that the learned referee fell into error in his construction of the contract; and, as the judgment which has been entered is in large measure dependent thereon, it cannot be sustained. It is by no means certain that upon the testimony the defendant should not have succeeded upon the counterclaim charging the plaintiff with the misappropriation of funds. It would be a task of some difficulty to find in the plaintiff's testimony proof showing that he replaced the moneys which he took in excess of any sum which was due to him either for commissions or salary. We do not, however, discuss this question, nor is our decision dependent thereon. The proof may be different upon another trial, and the plaintiff may supply the omission, if it exists.

For the reasons already stated, we reach the conclusion that the judgment should be reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event. All concur.